# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **SHAREE HARVELL,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | Case No.: 5:11-CV-0135-RDP |
| } | |
| **MICHAEL J. ASTRUE,** } | |
| **COMMISSIONER OF SOCIAL** } | |
| **SECURITY,** } | |
| } | |
| **Defendant.** } | |

## MEMORANDUM OF DECISION

Plaintiff ShaRee Harvell brings this action pursuant to Sections 205(g) and 1631(c) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her applications for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI") benefits under the Act. 42 U.S.C. §§ 405(g), 1383(c).

### I. Proceedings Below

Plaintiff filed her applications for a period of disability, DIB, and SSI benefits on August 21, 2006. [R. 71]. Plaintiff alleged a disability onset date of August 14, 2006 in both applications. [R. 88, 92]. Plaintiff's applications were denied on August 22, 2007. [R. 75]. Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). [R. 80]. In his March 17, 2009 decision, the ALJ determined that Plaintiff was not eligible for a period of disability, DIB, or SSI benefits because she failed to meet the disability requirements of the Act and retained the residual functional capacity to perform light work with restrictions. [R. 17, 23]. After the Appeals Council

denied Plaintiff's request for review of the ALJ's decision, that decision became the final decision of the Commissioner, and therefore a proper subject of this court's review. [R. 1-3]. 42 U.S.C. §§ 405(g), 1383(c).

At the time of the hearing in question, Plaintiff was 35 years old with a twelfth grade education. [R. 36]. Plaintiff had previously worked as a garment folder, a hand packager, and a surging machine operator. [R. 103]. Plaintiff alleges that she suffers from bipolar disorder with psychotic episodes, as well as weakness and inability to eat. [R. 102]. According to Plaintiff, she has been unable to engage in substantial gainful activity since August 14, 2006 due to these impairments. [R. 102].

Plaintiff complains that, despite taking medication, she suffers from daily hallucinations that distract her and prevent her from working. [R. 38-39]. Plaintiff states that she frequently experiences racing thoughts, lack of concentration, confusion, and trouble sleeping. [R. 44]. Plaintiff has also been diagnosed with diabetes mellitus and underwent surgery to treat cholelithiasis in 2006. [R. 267, 297]. In 2007, Plaintiff went to the doctor multiple times complaining of mild lower back pain. [R. 352-57].

Plaintiff was hospitalized four times between March 2007 and February 2008, each time claiming hallucinations and an urge to hurt herself or others. [R. 419, 612, 747, 765]. After each hospitalization, Plaintiff either denied further hallucinations or exhibited sufficient mood improvement and was discharged to home self-care. [R. 419, 613, 744, 763]. Doctors' notes from the four hospitalizations indicate that Plaintiff displayed little or no emotional distress and was oriented and calm, despite endorsing symptoms of depression and hallucinations. [R. 422, 617, 748, 765-66].

In January 2007, Dr. Thomas Tenbrunsel diagnosed Plaintiff with a mood disorder and cluster B personality disorder. [R. 362]. Dr. Tenbrunsel stated that Plaintiff may have difficulty maintaining employment, taking instruction, and responding to supervisors and co-workers until her current psychiatric problems were managed, but that she was capable of independent living. [R. 362].

In April 2007, Dr. Donna Scott assessed Plaintiff's residual functional capacity and found that Plaintiff had "marked" functional limitations in her ability to appropriately interact with the general public and respond to customary work pressures. [R. 572, 574]. Dr. Scott also opined that Plaintiff had "moderate" impairments in her ability to ask simple questions, accept instructions, respond appropriately to criticism from supervisors, take appropriate precautions regarding normal work hazards, and to respond to changes in the work setting. [R. 572-74]. In eleven of the eighteen categories that Dr. Scott assessed, Plaintiff had only "mild" impairments. [R. 572-73].

In March 2008, Dr. Scott reassessed Plaintiff's residual functional capacity and found that she continued to have marked limitations in her ability to interact with the public and respond to work pressures. [R. 795]. Dr. Scott further opined that Plaintiff had marked restrictions on her daily activities, as well as her ability to respond to supervision, to accept instructions and respond to criticism, and to work with others without being distracted. [R. 795-97]. Dr. Scott also found Plaintiff to have extreme impairment in her ability to respond to changes in the workplace and to recognize workplace hazards. [R. 796-97]. Plaintiff had mild impairments in nine of the eighteen categories. [R. 795-96].

In response to a hypothetical question presented during the hearing, a vocational expert ("VE") testified that the restrictions noted in Dr. Scott's March 2008 evaluation would prevent a person from performing or sustaining employment. [R. 63-65].

## II.  ALJ Decision

Determination of disability under the Act requires a five step analysis. *See* 20 C.F.R. § 404.1 *et. seq.*  First, the Commissioner determines whether the claimant is working.  Second, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities.  Third, the Commissioner determines whether claimant's impairment meets or equals an impairment listed in Appendix 1 of Part 404 of the Regulations.  Fourth, the Commissioner determines whether the claimant's residual functional capacity can meet the physical and mental demands of past work.  The claimant's residual functional capacity is what the claimant can do despite her impairment.  Finally, the Commissioner determines whether the claimant's age, education, and past work experience prevent the performance of any other work.  In making this final determination, the Commissioner will use the Medical-Vocational guidelines in Appendix 2 of Part 404 of the Regulations when all of the claimant's vocational factors and residual functional capacity are the same as the criteria listed in the Appendix.  If the Commissioner finds that the claimant is disabled or not disabled at any step in this procedure, the Commissioner will not review the claim any further.

The court recognizes that "the ultimate burden of proving disability is on the claimant" and that the "claimant must establish a *prima facie* case by demonstrating that [s]he can no longer perform [her] former employment." *Freeman v. Schweiker*, 681 F.2d 727, 729 (11th Cir. 1982) (other citations omitted).  Once a claimant shows that she can no longer perform her past

employment, "the burden then shifts to the [Commissioner] to establish that the claimant can perform other substantial gainful employment." *Id.*

The ALJ found that Plaintiff has not engaged in substantial gainful activity since August 14, 2006, and that Plaintiff acquired sufficient quarters of coverage to remain fully insured through September 30, 2011. [R. 13]. Based upon the medical evidence presented, the ALJ concluded that Plaintiff has a mood disorder, degenerative disk disease (DDD) of the lumbar spine, obesity, and type II diabetes mellitus, which are "severe" impairments as defined by the Act. [R. 13]. Nonetheless, the ALJ determined that Plaintiff's impairments neither meet nor equal the requirements for any impairment in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. 16].

According to the ALJ, Plaintiff's subjective complaints concerning her impairments and their impact on her ability to work are not fully credible due to the degree of inconsistency with the medical evidence established in the record and Plaintiff's own statements. [R. 18]. After consideration of all the medical evidence, including Plaintiff's subjective complaints, the ALJ found that Plaintiff retains the residual functional capacity to perform sedentary work, as defined in 20 C.F.R §§ 404.1567(a) and 416.967(a), with the following limitations: a sit/stand option with ability to sit two hours, stand one hour and walk half a mile; short and simple instructions; gradual workplace changes to avoid confusion; simple, low-stress work-related decisions; no work around ladders, ropes, or scaffolds; no commercial driving; and no work around hazardous machinery or unprotected heights. [R. 17].

The ALJ concluded that Plaintiff has a mild restriction in daily living activities and moderate difficulties in social functioning, concentration, persistence, and pace. [R. 16]. He further found

5

that although Plaintiff is unable to perform her past relevant work, there are a significant number of jobs in the national economy which Plaintiff could perform, all of which allow Plaintiff to work with the above-mentioned limitations. [R. 22-23]. Thus, the ALJ ruled that Plaintiff is not disabled as that term is defined in the Act and that Plaintiff therefore is not entitled to a period of disability, DIB, or SSI. [R. 23].

### III.  Plaintiff's Argument for Remand or Reversal

Plaintiff seeks to have the ALJ's decision, which became the final decision of the Commissioner following the denial of review by the Appeals Council, reversed, or in the alternative, remanded for further consideration. [*See* Pl.'s Mem. 15.]  Plaintiff argues that, for the following reasons, the ALJ's decision is not supported by substantial evidence and improper legal standards were applied: (1) the ALJ improperly substituted his own opinion for that of medical professionals; and (2) the ALJ erred in only considering whether Plaintiff was disabled as of her given onset date rather than subsequent to her March 2007 hospitalization. [*See* Pl.'s Mem. 13-14].

### IV.  Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision,  *see* 42 U.S.C. § 405 (g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied.  *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988);  *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision

is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701. For the reasons set forth below, the ALJ's decision denying Plaintiff benefits is due to be affirmed.

## V. Discussion

**A.    The ALJ Properly Evaluated the Medical Record in its Entirety.**

Plaintiff contends that the ALJ improperly substituted his own judgment for that of medical experts by disregarding certain medical opinions and failing to conduct a proper longitudinal analysis of the medical record. [Pl.'s Mem. 13]. Specifically, Plaintiff alleges the ALJ wrongly acted as both "judge and physician" by disregarding evidence about her residual functional capacity ("RFC") and by improperly using "bits and pieces" of the her medical history to reach his conclusion that she suffered from a mood disorder rather than bipolar disorder with psychotic features, and therefore, remained able to work. [Pl.'s Mem. 9-11, 13].

First, Plaintiff argues that the ALJ improperly disregarded the VE's testimony that the restrictions stated by Dr. Scott in her March 2008 RFC evaluation would preclude her from

performing and sustaining employment. [Pl.'s Mem. 8-9]. This argument is misplaced because the ALJ determined that Dr. Scott's 2008 evaluation was to be given little weight due to its lack of evidentiary support and its inconsistency with the other findings. [R. 20-21].

In evaluating a claimant's application for disability, the ALJ is charged with the duty to weigh the evidence, resolve material conflicts in testimony, and determine the case accordingly. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986). In the context of medical evidence, controlling weight must be given to a medical opinion from a treating source when the opinion is both well-supported by medically acceptable diagnostic techniques and consistent with the record. *See* 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3); SSR 96-2p, 1996 WL 374188 (July 2, 1996). However, statements from acceptable medical sources are not determinative of a claimant's RFC. *See* 20 C.F.R. §§ 404.1527(e), 404.1545, 404.1546(c), 416.927, 416.945, 416.946(c); SSR 96-5p, 1996 WL 374183 (July 2, 1996). As such, the ALJ is neither required to consider a physician's opinion of a claimant's RFC to be dispositive of that issue, nor to accept the VE's response to a hypothetical question based on a physician's inadequately supported opinion. *See* 20 C.F.R. §§ 404.1527(e), 416.927(e); SSR 96-5p, 1996 WL 374183 (July 2, 1996); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004).

Ultimately, the ALJ found no evidence supporting Dr. Scott's conclusion that Plaintiff's impairments had worsened between the April 2007 and March 2008 evaluations. [R. 20]. The ALJ determined that Dr. Scott's March 2008 evaluation, completed by circling "alleged impairments" on a pre-printed form, did not correspond with the fact that Plaintiff showed no evidence of limitations in her daily activities, voiced few complaints, and required no hospitalization or emergency care during the interim between the two evaluations. [R. 20-21].

The ALJ specifically noted that Plaintiff's own statements and actions contradicted Dr. Scott's 2008 opinion that she would have extreme impairments in her ability to respond appropriately to changes in her work setting and appropriately deal with workplace hazards. [R. 20]. Dr. Scott's notes reveal that Plaintiff had recently purchased a car, an act the ALJ found to be "totally inconsistent with an extreme limitation of avoiding hazards." [R. 20, 783]. Although Plaintiff reported continued hallucinations, the ALJ found that the record did not indicate that they limited her daily activities. [R. 20]. For these reasons, the ALJ gave little weight to Dr. Scott's 2008 opinion and rightly disregarded the VE's testimony based on the 2008 evaluation. [R. 20-21].

Second, Plaintiff claims that the ALJ failed to conduct the proper longitudinal analysis of her medical history in determining whether she was disabled. [Pl.'s Mem. 13]. Specifically, Plaintiff argues that the ALJ wrongly emphasized a few "brief passages" from her treating physicians that supported his conclusion that she had a mood disorder rather than bipolar disorder. [Pl.'s 9-10].

Plaintiff correctly states that the Social Security Regulations require that "all pertinent information relative to [Plaintiff's] condition" be reviewed. [Pl.'s Mem. 4]; 20 C.F.R. Part 404, Subpart P, Appendix 1, 12.00(E). However, Plaintiff's argument that the ALJ failed to conduct the required longitudinal analysis is off the mark because the ALJ, in evaluating her condition, considered the record in its entirety, beginning with Dr. Alrefai's June 2006 opinion and continuing through her testimony at the hearing in February 2009, and weighed the evidence according to its consistency with the case record. [R. 14-20].

After evaluating the medical record, the ALJ looked to the discrepancies between Plaintiff's claim that she suffers from near-constant hallucinations and sleep, concentration, and memory difficulties, and her testimony that she cooks, cleans, drives, uses her computer, and interacts with

her roommates. [R. 16, 18]. The ALJ then noted that similar discrepancies were observed by hospital personnel during Plaintiff's hospitalizations. [R. 18]. The ALJ specifically referenced notes from Plaintiff's doctors that described her as calm, oriented, and even smiling while endorsing symptoms of depression and hallucinations, as well as other physicians' notes indicating that Plaintiff consistently demonstrated good memory and concentration. [18-20]. The ALJ evaluated those notes in light of the fact that all four of Plaintiff's hospitalizations were self-referrals and each time she quickly responded to treatment and was discharged to self-care. [R. 18-19].

From his analysis of the entire record, the ALJ concluded that Plaintiff's mental impairment, while severe, did not meet or medically equal the "paragraph B" or "paragraph C" criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1, §§ 12.04 or 12.08. [R. 16]. As such, the ALJ was not compelled to specify Plaintiff's precise mental impairment.

The task before this court is simply to determine whether the ALJ's decision is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Walden v. Schweiker,* 672 F.2d 835, 838 (11th Cir. 1982). Because the ALJ's decision to disregard the VE's recommendation based on Dr. Scott's March 2008 evaluation and his finding that Plaintiff suffered from a severe mood disorder are both supported by substantial evidence, the ALJ's decision is due to be affirmed.

**B.    The ALJ Properly Considered Evidence of Plaintiff's Disability from Her Onset Date Through September 30, 2011 – The Date By Which Plaintiff Must Prove Disability.**

Plaintiff argues that the ALJ erred in considering only whether she was disabled as of her alleged onset date, August 14, 2006. [Pl.'s Mem. 13-14]. Plaintiff further argues that the evidence establishes that she was disabled subsequent to her March 2007 hospitalization. [Pl.'s Mem. 13-14]. This argument is misplaced because the ALJ refers numerous times to medical evidence from

Plaintiff's four hospitalizations, as well as treatment notes from as late as October 2008 and Plaintiff's own 2009 testimony. [R.18-20]. Because the ALJ applied the proper legal standard by considering available evidence of Plaintiff's disability from her alleged onset date through the date by which she must establish her disability, the ALJ's decision is due to be affirmed.

## VI.  Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and the proper legal standards were applied in reaching this determination. The Commissioner's final decision is therefore due to be affirmed, and a separate order in accordance with the memorandum of decision will be entered.

**DONE** and **ORDERED** this ____24th____ day of October, 2011.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE